# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

LOVELL THOMAS,

                         Petitioner,                    Civil Action No. 2:12-cv-11707
                                                        Honorable Lawrence P. Zatkoff

v.

MARY BERGHUIS,

                         Respondent.
_____/


OPINION & ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DENYING
A CERTIFICATE OF APPEALABILITY, AND DENYING PERMISSION TO PROCEED ON
APPEAL IN FORMA PAUPERIS

This matter is before the Court on Petitioner's pro se request for habeas relief pursuant to 28

U.S.C. § 2254. Petitioner was convicted in the Wayne Circuit Court of armed robbery, MICH. COMP.

LAWS § 750.529, and larceny from a person, MICH. COMP. LAWS § 750.357. Petitioner was

sentenced as a fourth-time habitual felony offender to concurrent terms of 25-to-50 years

imprisonment for the robbery conviction, and 5-to-10 years imprisonment for the larceny conviction.

The petition raises ten claims: (1) Petitioner was denied his right to represent himself at trial;

(2) the prosecutor failed to comply with a discovery order; (3) the two charges should have been

tried separately; (4) Petitioner was denied the effective assistance of counsel; (5) there was

insufficient evidence presented at trial to sustain Petitioner's conviction for armed robbery; (6) the

trial court erred in allowing the prosecutor to play a recording of a 9-1-1 call during his opening

statement; (7) Petitioner's sentence is disproportionate to his crime; (8) Petitioner's sentence was

increased because he challenged the guideline scoring; (9) the trial court relied on misinformation

in imposing the sentence; and (10) Petitioner was erroneously ordered to pay attorney fees as part

of his sentence.

The petition will be denied because none of Petitioner's claims merit relief. Petitioner will also be denied a certificate of appealability and denied leave to proceed on appeal *in forma pauperis*.

Background

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant's convictions arise from two separate thefts at a 7-Eleven store in Taylor within a two-hour period on January 19, 2009. Beer was stolen during the first offense and cash was stolen during the second offense. Both offenses were captured by the store's security camera, and a video recording of the offenses was played for the jury. The same store clerk was working during both offenses and identified defendant as the perpetrator. Defendant was convicted of larceny for the offense involving the theft of the beer, and armed robbery for the offense involving the theft of the cash. The defense theory at trial was that even if the jury believed that defendant was the perpetrator, he was not armed during either offense.
>
> *          *          *
>
> In this case, the victim testified that defendant approached her at the store counter, put his hand in his jacket pocket, and pointed a concealed article at her while demanding that she give him "the green" from the cash register. The victim believed that the concealed article was a gun and followed defendant's instructions because she believed that defendant would shoot her. Defendant's hand remained in his pocket pointing the concealed article at the victim during the entire episode.

*People v. Thomas*, No. 293888, 2010 WL 4865991 (Mich. Ct. App. Nov. 30, 2010).

Following his conviction and sentence, Petitioner filed an appeal by right in the Michigan Court of Appeals. His appellate brief raised the following claims:

> I. Did the insufficient evidence presented during the defendant-appellant's trial on the element of being armed, to support the jury's verdict of guilty beyond a reasonable doubt of one count of armed robbery, constitute a denial of the due process of law guaranteed by the Fifth Amendment to the United States Constitution?

II. Does the defendant-appellant's sentence of from twenty five years to fifty years, imposed pursuant to his conviction for one count of armed robbery as a fourth habitual felony offender, constitute a violation of the guarantee against cruel and unusual punishment provided by the United States Constitution and the guarantee against cruel or unusual punishment provided by the Michigan Constitution?

Petitioner also filed his own supplemental pro se brief which raised another eight issues:

I. Defendant-appellant was denied his Sixth Amendment right to the effective assistance of counsel where, due to a complete breakdown in communication, counsel failed to object to the improper joinder, and failed to object to improperly ordered attorney fees.

II. The trial court denied defendant his constitutional right to represent himself, and also denied refusing to sever unrelated charges.

III. Defendant-appellant was denied his right to a fair trial where, count 1 armed robbery should have been severed from count 2 armed robbery where offenses were not related under Michigan Court Rule 6.120(b)(1).

IV. *Brady* violation: the trial court abused its discretion, failing to compel the prosecution to honor the court order, to provide the defendant with all police incident reports, 911 calls and dispatch log sheets photo copy's of the 2:40 a.m. robbery.

V. The trial court judge abused his discretion allowing the prosecution to admit a 9-1-1 tape of the complaining witness conversation of the incident with the police operator on his opening statement to the jury, without first being admitted into evidence and without being authenticated and properly published for proper foundation.

VI. Defendant-appellant is entitled to resentencing where the trial court ordered him to pay attorney fee without first determining his ability to pay.

VII. The trial court judge abused his discretion, maliciously punishing the defendant at the sentencing hearing for exercising his constitutional rights to challenging the inaccurate information, where the court became bias, and assessed points for Offense Variable 19.

VIII. Defendant is entitled to resentencing where the trial court used inaccurate information to score him, and is entitled to have his sentence report corrected where it contains inaccurate information regarding prior convictions.

The Michigan Court of Appeals rejected these claims and affirmed Petitioner's conviction

3

and sentence. *Id*. Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims, but it was also denied by form order. *People v. Thomas*, 489 Mich. 900 (2011) (table).

The habeas petition raises the same ten claims that were presented to the state courts during Petitioner's appeal of right.

Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410-11.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court

4

decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862, 176 L. Ed. 2d 678 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)).  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)).  Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* "[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 131 S. Ct. at 786.

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedent. *Id.*  Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (*citing Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979))(Stevens,

5

J., concurring in judgment). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-787.

Discussion

A. Denial of Right to Self-Representation

Petitioner first claims that he was denied his right to represent himself at trial. Respondent asserts that the claim was reasonably rejected by the Michigan Court of Appeals on the merits.

The Sixth Amendment to the United States Constitution grants a criminal defendant the right to self-representation if such a choice is voluntarily and intelligently made. *Martinez v. Court of Appeal of California*, 528 U.S. 152, 153 (2000); *Faretta v. California*, 422 U.S. 806, 819 (1975). A waiver of the right to counsel must be voluntary, knowing and intelligent. *Iowa v. Tovar*, 541 U.S. 77, 88 (2004); *Faretta*, 422 U.S. at 835; *Jones v. Jamrog*, 414 F.3d 585, 593 (6th Cir. 2005). "The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938); see also *Tovar*, 541 U.S. at 92. Additionally, a criminal defendant who seeks to proceed pro se must generally be aware of the risks of self-representation so that "he knows what he is doing and his choice is made with eyes open." *Faretta*, 422 U.S. at 835. The right to counsel and the right to defend oneself are viewed as correlative rights in that waiver of one necessarily constitutes an assertion of the other. *See United States v. Conder*, 423 F.2d 904, 908 (6th Cir. 1970); *see also United States v. Cromer*, 389 F.3d 662, 680 (6th Cir. 2005).

6

Here, the record discloses that Petitioner's request for self-representation was made at a pretrial hearing at which he continuously sought to challenge the accuracy of his prior criminal record. The trial court advised Petitioner that he would have an opportunity to challenge his prior convictions at sentencing, and directed the prosecutor to take necessary steps to address his concerns by that time. Despite the trial court's assurances that his prior convictions would not be admitted at trial, Petitioner continued to revisit the issue of his prior convictions and complained that his attorney was not resolving that matter. For that reason, Petitioner asked to represent himself so that he could continue to address the issue, and he also requested stand-by counsel to assist him at trial.

Later in the proceeding, the trial court stated the reasons it denied Petitioner's request to represent himself:

> I want to address the issue Mr. Thomas raised with regard to the issue of wanting to represent himself. Leading case is People versus Anderson found at 398 Michigan 361, a 1976 case. Also there is another case that this Court is certainly well familiar with, People versus Hicks found at 259 Mich App, a 2003 case. The Court also must comply with Michigan Court Rule 6.005. Certainly the request for self representation needs to be unequivocal. It needs to be knowingly, intelligently, voluntarily made. And also it is not an absolute right as the Court in Anderson set has set forth. That certainly the Court can consider a number of factors as the court rule and in People versus Anderson say. If self representation will disrupt, unduly inconvenience or burden the Court and the administration the Court's business, the right to self representation can be denied.

> In this particular case I do think that I take into account the fact that Mr. Thomas is charged with two counts of armed robbery, capital offenses for which he can go to prison for the rest of his life. He's also on parole. The stakes are extraordinarily high. The issues that Mr. Thomas has raised, while there has been an effort to try to resolve them, Mr. Thomas I do think does not have an accurate and reasonable grasp of the legal issues that will be before the Court.

> I think that he has been distracted for purposes of his pretrial discussions on issues that have nothing to do with the issues that are going to arise at trial, which I think are the main issues. Certainly Mr. Thomas would be given the opportunity to participate and actively be heard if we ever get to the issue of a sentencing. But with regard to the issue of trial, I do not think that this is appropriate for Mr. Thomas to

7

represent himself. I do think that his complete focusing on prior convictions and California incidents and not focusing on the issues here at hand, with regard to guilt or innocence does provide a disruption and a burden to the Court and the administration of the Court's business. And for that reason the request to represent himself is denied.

Tr. 4/24/09, pp. 17-19.

The Michigan Court of Appeals subsequently found that the trial court did not err in denying Petitioner's request. The Court agrees that this decision was reasonable. As an initial matter, it should be noted that although Petitioner requested the right to represent himself so he could address his prior record prior to trial, he also requested stand-by counsel to assist him during trial. A defendant in a criminal case does not have a constitutional right to hybrid representation. *United States v. Cromer*, 389 F.3d 662, 681 n.12 (6th Cir. 2004). In *McKaskle v. Wiggins*, the Supreme Court observed that "*Faretta* does not require a trial judge to permit 'hybrid' representation" and that "[a] defendant does not have a constitutional right to choreograph special appearances by counsel." 465 U.S. 168, 183 (1984). Petitioner's requests to represent himself along with the assistance of counsel cannot be considered a clear and unequivocal invocation of his right to represent himself. "Because the assertion of the right to self-representation necessarily involves a waiver of the constitutional right to counsel, and given the importance of the right to counsel, we think the wisest course is to require a clear and unequivocal assertion of a defendant's right to self-representation before his right to counsel may be deemed waived." *Cromer*, 389 F.3d at 682-83. Indeed, "requiring an articulate and unmistakable demand of the right to proceed pro se decreases the danger of a savvy defendant manipulating these two mutually exclusive rights to put the [trial] court in a Catch-22." *Id*.

Moreover, when faced with a defendant's request to represent himself, a trial court must

8

determine whether the defendant's decision to proceed pro se is knowing, intelligent, and voluntary. *Faretta*, 422 U.S. at 835, 95 S. Ct. at 2541. Although "technical legal knowledge, as such, [is] not relevant to an assessment of [a defendant's] knowing exercise of the right to defend himself," *Faretta*, 422 at 836, 95 S. Ct. at 2541. It is clear from Petitioner's comments and behavior at trial that he lacked the ability to effectively conduct his own defense. As the trial court noted, Petitioner was hung-up on the sentencing guidelines and his prior record before the trial had even commenced. The focus at that point should have been his trial defense. Because Petitioner "neither exhibited a genuine inclination to conduct his own defense nor manifested an ability to do so[,]" the Michigan Court of Appeals did not commit constitutional error when it affirmed the state trial court's decision denying Petitioner's request for self-representation. *Robards v. Rees*, 789 F.2d 379, 384 (6th Cir. 1986).

In light of the record supporting the trial court's denial of Petitioner's request to represent himself, Petitioner is unable to satisfy the standard for relief required by AEDPA. Accordingly, Petitioner is not entitled to habeas relief of this claim.


B. Violation of Discovery Order

Petitioner next asserts that the trial court erred in failing to compel the prosecutor to provide him with a tape of the first 9-1-1 call. Petitioner argues that the missing recording was exculpatory and material to his defense.

The Due Process Clause requires the state to disclose exculpatory evidence to the defense. *See Brady v. Maryland*, 373 U.S. 83 (1963). "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because

9

it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Thus, in order to establish a *Brady* claim, the petitioner must show that: (1) evidence was suppressed by the prosecution in that it was not known to the petitioner and not available from another source; (2) the evidence was favorable or exculpatory; and (3) the evidence was material to the question of the petitioner's guilt. *See Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000); *Luton v. Grandison*, 44 F.3d 626, 628-29 (8th Cir. 1994). The petitioner bears the burden of establishing each of these three elements. *See Carter*, 218 F.3d at 601. Further, although *Brady* requires disclosure of exculpatory evidence, it is well established that "*Brady* . . . does not require the government to create exculpatory material  that does not exist." *United States v. Sukumolachan*, 610 F.2d 685, 687 (9th Cir. 1980); *see also Richards v. Solem*, 693 F.2d 760, 766 (8th Cir. 1982) ("Although the state has a duty to disclose evidence, it does not have a duty to create evidence.").

The Michigan Court of Appeals rejected the claim as follows:

Defendant argues that he was denied his right to due process because the prosecutor failed to provide an audio recording of the 9-1-1 call that was made after the first offense, contrary to *Brady v. Maryland*, 373 U.S. 83 (1963). The record discloses that the trial court directed the prosecutor before trial to obtain the 911 recording if it still existed. The prosecutor later advised the trial court that he had contacted the police department, which indicated that it would attempt to provide the recording by the next week. No further mention of this matter was made before or at trial. Because there is no record that defendant raised this issue after the prosecutor was initially directed to provide the recording, we consider this issue unpreserved. Accordingly, our review is limited to plain error affecting defendant's substantial rights. *Carines*, 460 Mich. at 752-753, 763-764.

A criminal defendant has a due process right of access to certain information possessed by the prosecution if that evidence might lead a jury to entertain a reasonable doubt about a defendant's guilt. *People v. Lester*, 232 Mich.App. 262, 280 (1998), citing *Brady*, 373 U.S. 83. "Impeachment evidence as well as exculpatory evidence falls within the Brady rule because, if disclosed and used effectively, such evidence 'may make the difference between conviction and

acquittal."' *Lester*, 232 Mich.App. at 281(citation omitted). To establish a *Brady* violation, a defendant must prove: (1) that the state possessed evidence favorable to the defendant; (2) that the defendant did not possess the evidence and could not have obtained it himself with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different. *Id*. at 281-282, 591 N.W.2d 267.

In this case, there is no indication that the prosecutor either possessed or suppressed the recording of the 911 call of the first incident. More compelling, however, is that the lack of the 911 recording did not affect the outcome of the case. Defendant sought the recording for the purpose of showing that the victim did not state that he possessed a weapon during the first incident, thereby proving that he was not armed. The prosecutor conceded in closing argument that defendant was not armed during the first incident, and the jury convicted defendant of larceny from a person. To the extent that defendant sought to attack the victim's credibility in this regard, the responding police officer testified that he did not recall the victim mentioning that defendant was armed or that defendant had his hand in his pocket during the first offense. Consequently, defendant has failed to show a plain error affecting his substantial rights.

*Thomas*, 2010 WL 4865991 at *4-5.

This decision did not result in an unreasonable application of the controlling Supreme Court standard. First, as noted by the state appellate court, it is not clear that defense counsel was denied the materials at trial. The issue was raised before trial, the court ordered production if possible , and then the matter was never raised again. In any event, Petitioner asserts that the materials were relevant to his defense to show that the victim never stated that Petitioner had – or pretended to have – a weapon during the first incident. Petitioner acknowledges that as a result he was only convicted of larceny for the first incident, but he argues that statement would have impacted the victim's credibility as to the second incident. But there was no inconsistency in the witness's accounts. She testified at trial that Petitioner only had his hand in his pocket as if pointing a handgun at her during the second incident. She did not claim that he was armed during the first incident. Therefore, Petitioner has not demonstrated how he was prejudiced by the failure of the prosecutor to provide

11

these materials. The decision by the state court was thus reasonable, and Petitioner has failed to demonstrate entitlement to relief.

C. Failure to Sever Charges

Petitioner next asserts that the two charges should have been tried separately because of the lapse of time between the incidents.

Under Michigan law, the trial court had the discretion to determine whether the claims should be severed, and after a hearing on the matter, the court denied the motion. Under Michigan Court Rule 6.121(D), "the court may sever the trial of defendants on the ground that severance is appropriate to promote fairness to the parties and a fair determination of the guilt or innocence of one or more of the defendants."

Petitioner's assertion that the trial court erred under state law is an argument for which "federal habeas corpus relief does not lie." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). To be cognizable in federal habeas corpus, there must be constitutional errors that were material to the outcome of the case and resulted in a denial of fundamental fairness to Petitioner. *Jameson v. Wainwright*, 719 F.2d 1125 (6th Cir. 1983). To obtain federal habeas relief on this claim, Petitioner must show that misjoinder of the counts "resulted in prejudice so great as to deny a defendant his right to a fair trial." *Davis v. Coyle*, 475 F.3d 761, 777 (6th Cir. 2007) (citation and internal alterations omitted). A risk of undue prejudice exists whenever joinder of counts permits introduction of evidence of other crimes that would otherwise be inadmissible. *Id*. at 777.

> By allowing joinder of offenses, the possibility exists that a jury may use evidence of one of the charged crimes to infer a general criminal disposition by the defendant; the jury also may confuse or cumulate the evidence of the various crimes charges. The prejudice that [a petitioner] must demonstrate, however, in order to justify a

12

grant of a writ of habeas corpus is actual prejudice, not merely the potential for prejudice.

*Id*. at 777 (internal citations omitted).

Here, both offenses occurred at the same location, were committed against the same victim, and occurred within a two-hour time period. The crimes were part of a single scheme or plan to steal from the store. Petitioner presented the same defense for each offense – that he was not armed and that the victim was not credible. Petitioner simply has not shown how he was actually prejudiced by the joinder of the two charges for trial. Accordingly, he has not demonstrated entitlement to relief based on this claim.

D. Ineffective Assistance of Counsel

Petitioner's fourth claim asserts that he was denied the effective assistance of counsel at trial when his attorney failed to move to sever the charges and failed to object to the imposition of attorney fees at sentencing. Neither claim merits relief.

First, with respect to severing the charges, the Court has already found that Petitioner was not entitled to have separate trials for the two offenses. Defense counsel cannot be ineffective for failing to file a meritless motion. *See Bradley v. Birkett*, 192 Fed. Appx. 468, 475 (6th Cir. 2006). In any event, Petitioner's counsel did in fact unsuccessfully move to sever the charges.

Next, with respect to the failure to object to the imposition of attorney fees, the claim is frivolous. Where a habeas petitioner is not claiming the right to be released but is challenging the imposition of a fine or other costs, he may not bring a petition for writ of habeas corpus. *See United States v. Watroba*, 56 F. 3d 28, 29 (6th Cir. 1995).  Accordingly, Petitioner's tenth claim, which asserts that attorney fees were erroneously imposed, is also without merit.

Petitioner's ineffective assistance of counsel claims are therefore meritless.

E. Insufficiency of the Evidence

Petitioner next claims that there was insufficient evidence presented at trial to show that he was armed during the robbery.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). On direct review, analyzing a sufficiency of the evidence challenge must focus on whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In the habeas context, "[t]he *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n.16).

"Two layers of deference apply to habeas claims challenging evidentiary sufficiency." *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010) (citing *Brown v. Konteh*, 567 F.3d 191, 204-05 (6th Cir. 2009)). First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brown*, 567 F.3d at 205, (citing *Jackson*, 443 U.S. at 319). Second, if the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id*.

14

Armed robbery under Michigan law is a statutory offense. The applicable statute reads:

> A person who engages in conduct proscribed under section 530 [which defines robbery as a larceny by means of an assault upon the victim] and who in the course of engaging in that conduct, possesses a dangerous weapon or an article used or fashioned in a manner to lead any person present to reasonably believe the article is a dangerous weapon, or who represents orally or otherwise that he or she is in possession of a dangerous weapon, is guilty of a felony punishable by imprisonment for life or for any term of years.

MICH. COMP. LAWS § 750.529.

A prosecutor thus must prove two elements beyond a reasonable doubt: (1) the defendant, in the course of committing a larceny of any money or other property that may be the subject of a larceny, used force or violence against any person who was present or assaulted or put the person in fear, and (2) the defendant, in the course of committing the larceny, either possessed a dangerous weapon, possessed an article used or fashioned in a manner to lead any person present to reasonably believe the article was a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon. *People v. Chambers*, 277 Mich. App. 1, 7 (2007).

In this case, the victim testified that Petitioner put his hand in his jacket pocket and pointed a concealed article at her.  In light of this testimony, the Court finds that it was reasonable for the state appellate court, applying the governing standard, to find that sufficient evidence was presented to show that Petitioner was armed within the meaning of Michigan's armed robbery statute. The testimony of a victim alone can be constitutionally sufficient to sustain a conviction. *See*, *e.g.*, *Tucker v. Palmer*, 541 F.3d 652, 658 (6th Cir. 2008). The state appellate court's conclusion thus did not result in a decision that was contrary to, or an unreasonable application of, *Jackson*. Consequently, habeas relief is not warranted on this claim.

15

F. Playing Recording of Second 9-1-1 Call During Opening Statement

Petitioner's sixth claim asserts that the trial court erroneously allowed the prosecutor to play a recording of the second 9-1-1 call by the victim during his opening statement on the grounds that the recording had not yet been authenticated.

The claim is frivolous. A prosecutor does not commit misconduct by referring during opening statement to evidence the prosecutor intends to introduce and which in good faith he believes is admissible. *See United States v. Chirinos*, 112 F.3d 1089, 1098 (11th Cir. 1997). In fact, later in trial the same recording was admitted into evidence without objection after the victim identified her own voice and testified that it was a recording of her call.

Accordingly, habeas relief is not warranted on this claim.


G. Excessive Sentence

Petitioner's seventh claim asserts that his 25-to-50 year sentence for armed robbery violates the Eighth Amendment because it is disproportionate to the seriousness of his crime.

Petitioner's proportionality argument is unpersuasive because a plurality of the Supreme Court has held that "the Eighth Amendment contains no proportionality guarantee." *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991). The Constitution "forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Id.* at 1001 (Kennedy, J., concurring) (quoting *Solem v. Helm*, 463 U.S. 277, 288 (1983)). "The gross disproportionality principle reserves a constitutional violation for only the extraordinary case." *Lockyer v. Andrade*, 538 U.S. 63, 77 (2003).

The Supreme Court determined in *Harmelin* that life imprisonment without the possibility of parole for possession of more than 650 grams of cocaine was not cruel and unusual punishment

16

even though the petitioner had no prior felony convictions. *Harmelin*, 501 U.S. at 1009 (1991). Petitioner, in contrast, had an extensive criminal record and was convicted of an offense that threatened violence against a person. With the Supreme Court's determination in *Harmelin* in mind, the Court finds that Petitioner's minimum sentence of 25 years for armed robbery cannot be considered grossly disproportionate to the seriousness of the crime. Accordingly, Petitioner's proportionality argument fails.

## H. Sentencing Guidelines

Petitioner's eighth claim asserts that the trial court erroneously increased his sentence when it scored the guidelines in a way which reflected Petitioner's misrepresentation regarding his criminal history.

Petitioner's sentencing hearing was adjourned twice because Petitioner claimed that his criminal history report indicated prior convictions attributable to another man with the same name. In the end, records from the Washtenaw Circuit Court and fingerprints convinced the trial court that Petitioner was indeed the same man who was convicted of the disputed offenses. As a result, the court scored the guidelines to reflect the fact that Petitioner "otherwise interfered with or attempted to interfere with the administration of justice." Michigan Sentencing Guideline Offense Variable 19.

A habeas petitioner's claim that the trial court violated state law when sentencing him is not cognizable in habeas corpus proceedings. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988); *Haynes v. Butler*, 825 F.2d 921, 924 (5th Cir. 1987). Federal habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan*

17

*Department of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). Petitioner's claim that the court improperly scored the guidelines range raises issues of state law that are not cognizable on habeas review. *See Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (Gadola, J.) (claim that sentencing court departed from Michigan sentencing guidelines presents an issue of state law only and is, thus, not cognizable in federal habeas review); *Welch v. Burke*, 49 F. Supp. 2d 992, 1009 (E.D. Mich. 1999) (Cleland, J.) (same); *see also Branan*, 861 F.2d at 1508 (claim that court misapplied state sentencing guidelines not cognizable on habeas review).

As such, the Court finds this claim is without merit.


I. Incorrect Information Used to Fashion Sentence

Petitioner's ninth claim asserts that the trial court relied on incorrect information regarding his prior record in imposing the sentence.

Criminal defendants have a due process right to a sentence based on accurate information. *United States v. Tucker*, 404 U.S. 443, 447 (1972); *see also Townsend v. Burke*, 334 U.S. 736, 740-41 (1948). In this regard, the Supreme Court has sustained due process objections to sentences imposed on the basis of "misinformation of constitutional magnitude." *Roberts v. United States*, 445 U.S. 552, 556 (1980), quoting *Tucker*, 404 U.S. at 447; see also, *Townsend*, 334 U.S. at 740-41. To demonstrate a due process violation "the defendant must establish that the challenged evidence is materially false or unreliable, and that such false or unreliable information actually served as the basis for the sentence." *United States v. Silverman*, 976 F.2d 1502, 1512 (6th Cir.1992) (emphasis deleted) (quoting *United States v. Robinson*, 898 F.2d 1111, 1116 (6th Cir.1990)). The evidence a sentencing court relies upon need only possess "some minimal indicia of reliability." *Robinson*, 898

18

F.2d at 1115.

Petitioner challenged the accuracy of several of his prior convictions at the sentencing hearing. The trial court questioned Petitioner at length to make a record of his challenges. The court then ordered the prosecutor to take the necessary steps to address Petitioner's claims of inaccuracy and to resolve the matter. When the proceedings resumed, the prosecutor submitted exhibits and reported his findings regarding the accuracy of the challenged convictions. Based on these materials, the trial court accepted the facts as alleged by the prosecutor. The evidence relied on by the court in imposing the sentence therefore possessed at least "some minimal indicia of reliability." Petitioner's claim is without merit.

Certificate of Appealability

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if Petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.* at 336-37. "The district court must issue or deny a certificate of appealability

19

when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a),

28 U.S.C. foll.§ 2254.

Petitioner has not demonstrated a substantial showing of the denial of a constitutional right.

Accordingly, a certificate of appealability is not warranted in this case. The Court further concludes

that Petitioner should not be granted leave to proceed *in forma pauperis* on appeal, as any appeal

would be frivolous. *See* Fed. R. App. P. 24(a).

Conclusion

Accordingly, IT IS HEREBY ORDERED that the petition for writ of habeas corpus is

DENIED.

IT IS FURTHER ORDERED that a certificate of appealability is DENIED.

IT IS FURTHER ORDERED that permission to proceed *in forma pauperis* on appeal is

DENIED.

IT IS SO ORDERED.

S/Lawrence P. Zatkoff
Hon. Lawrence P. Zatkoff
United States District Judge

Dated: December 9, 2014